IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

AUDREY SCOTT,
    Plaintiff,

v.

UPMC, d/b/a UNIVERSITY OF
PITTSBURGH MEDICAL CENTER,
    Defendant.

09cv1475
**ELECTRONICALLY FILED**

# MEMORANDUM OPINION

## I. Introduction

Before the Court is defendant University of Pittsburgh Medical Center's ("UPMC") Motion for Summary Judgment on plaintiff Audrey E. Scott's claims under the Family and Medical Leave Act ("FMLA"), 29 U.S.C. §§ 2601-2654. After careful consideration of the motion for summary judgment, response thereto, the memoranda of law in support and in opposition to summary judgment, and the documents, deposition testimony and other matters that have been produced by the parties in support of their positions, the Court finds that plaintiff has not met her burden of proving that she has a "serious health condition" so as to trigger the protections of the FMLA or her entitlement to leave or benefits. The Court will, therefore, grant summary judgment in favor of UPMC.

## II. Background

Ms. Scott worked on the housekeeping staff for UPMC, a large urban hospital in Pittsburgh. Ms. Scott filed her Complaint on November 5, 2009, claiming at Count I that UPMC violated her rights under the Family and Medical Leave Act and willfully interfered with, restrained and denied her the exercise of rights provided by the FMLA and its implementing regulations, and at Count II, that UPMC retaliated against her for attempting to assert her FLMA rights, based on the following averments.

On or about July 2, 2009, Ms. Scott presented to her supervisor a note from Manuel Castillo, M.D., a treating physician, which indicated she was restricted to "light duty for four weeks." Complaint, § 8. After consultation with another supervisor, plaintiff was advised there was no light duty and that she should immediately "clock out." Complaint, § 9.

On July 7, 2009, Ms. Scott contacted Work Partners, which handled FLMA leave matters for UPMC. Work Partners initiated a file reference and informed Ms. Scott that she would receive necessary paperwork from a leave specialist within 48 hours. Complaint, §§10-12. Ms. Scott alleges that over the next several weeks, she made various communications with UPMC and Work Partners personnel, Complaint, § 13-17, and that on or about July 21, 2009, she furnished to

UPMC Dr. Castillo's attending physician statement outlining Ms. Scott's medical condition [back pain] and restrictions, and specifically indicating that she was not able to return to "full-time, full-duty without restrictions. However, Dr. Castillo identifies numerous restrictions including that she is restricted to 'light' defined as maximum of lifting of up to 20 pounds in additional limitations. Dr. Castillo's report dated July 21, 2009 continues to state that her first symptoms appeared on or about November 6, 2008, that a surgery was completed on November 14, 2008 and provided additional diagnostic information including diagnosis, objective findings on examination, and subjective symptoms." Complaint, § 17.

By letter of August 14, 2009, Jack Grandy, Director of Environmental Services for UPMC, informed Ms. Scott that UPMC could accommodate her medical "light duty" restrictions, that he had previously sent a letter advising her to return to work on August 4, 2009, and that as a result of her actions, her "employment with UPMC and UPMC Mercy is terminated effective July 2, 2009." Complaint, § 18. Plaintiff acknowledges that on or about July 15, 2009, Mr. Grandy informed Ms. Scott that he could accommodate her on the 3 p.m. to 11 p.m. shift in a light duty capacity. Complaint, § 19.

Plaintiff further avers that Work Partners sent Ms. Scott a letter dated September 14, 2009, informing her that she had to return requested paperwork by

September 29, 2009, or else her failure to return to work "could result in corrective action including termination," and that "[n]otwithstanding information being provided, UPMC terminated Ms. Scott's employment instead of processing her requested FMLA leave." Complaint, §§ 20-22.

Based on the foregoing, plaintiff claims that UPMC's conduct in terminating her is a violation of the FMLA "insofar as both interfering with and denying her requested leave," and that UPMC retaliated against her in violation of the FLMA for asserting her right to medical leave. Complaint, §§ 22, 29, 31.

### III. Summary Judgment Standards

Summary judgment is only proper when there is no genuine issue of material fact in the case and the moving party is entitled to judgment as a matter of law. See Fed. R. Civ. P. 56(c)(2). The Court's role in reviewing a motion for summary judgment is "not to weigh the evidence or to determine the truth of the matter, but only to determine whether the evidence of record is such that a reasonable jury could return a verdict for the nonmoving party." *Am. Eagle Outfitters v. Lyle & Scott Ltd.*, 584 F.3d 575, 581 (3d Cir. 2009). If so, summary judgment will not be granted.

Moreover, the Court "must view all of the facts in the light most favorable to the non-moving party, who is 'entitled to every reasonable inference that can be

drawn from the record.' *Merkle v. Upper Dublin Sch. Dist.*, 211 F.3d 782, 788 (3d Cir. 2000). '[W]hen there is a disagreement about the facts or the proper inferences to be drawn from them, a trial is required to resolve the conflicting versions of the parties.' *Peterson v. Lehigh Valley Dist. Council*, 676 F.2d 81, 84 (3d Cir. 1982)." *Reedy v. Evanson*, --- F.3d ----, 2010 WL 2991378, *8 (3d Cir. 2010).

**IV.  Plaintiff Cannot Prove That She Had a "Serious Health Condition," an Essential Threshold Element of Her FLMA Claims**

To be sure, there are vigorous and genuine factual disputes regarding plaintiff's communication of her medical condition to UPMC and Work Partners (or lack thereof) and the responsive communications (or lack thereof) to plaintiff, and whether plaintiff provided medical certification or the equivalent upon request by the employer. Resolution of these factual disputes would involve credibility determinations for the jury. These disputes are *not material*, however, because plaintiff has not proffered sufficient evidence upon which a reasonable jury could conclude that Ms. Scott met her threshold burden of proving a "serious health condition" such that the benefits and protections of the FMLA would trigger.

**A. "Serious Health Condition" – A Threshold Requirement**

The United States Court of Appeals for the Third Circuit recently summarized the FMLA as follows:

## Interpretation of the FMLA Claim

> Congress promulgated the FMLA in 1993 to accommodate "the important societal interest in assisting families[ ] by establishing a minimum labor standard for leave." *Churchill v. Star Enters.,* 183 F.3d 184, 192 (3d Cir. 1999) (quoting S.Rep. No. 103-3 at 4, 1993 U.S.S.C.A.N. at 6-7). To protect that interest, the FMLA contains two distinct provisions. *Callison v. City of Philadelphia*, 430 F.3d 117, 119 (3d Cir. 2005). First, it makes it "unlawful for any employer to interfere with, restrain, or deny the exercise of or the attempt to exercise, any right provided under" the FMLA. 29 U.S.C. § 2615(a)(1). A claim arising under that provision is known as an "interference" claim. *Callison,* 430 F.3d at 119. Second, the FMLA makes it "unlawful for any employer to discharge or in any other manner discriminate against any individual for opposing any practice made unlawful" by the FMLA. 29 U.S.C. § 2615(a)(2). A claim under that provision is referred to as a "retaliation" or a "discrimination" claim. *Callison*, 430 F.3d at 119.

*Hayduk v. City of Johnstown*, 2010 WL 2650248, *2 (3d Cir. July 2, 2010).

The *Hayduk* Court also delineated the burdens of proof on interference and retaliation claims under the FMLA:

> The two theories of recovery available under the FMLA require proof of different elements. To prove an interference claim, a plaintiff must show "[(1)] that he was entitled to benefits under the FMLA and [(2)] that his employer illegitimately prevented him from obtaining those benefits." *Sarnowski v. Air Brooke Limousine, Inc.*, 510 F.3d 398, 401 (3d Cir. 2007). To prove a retaliation claim, a plaintiff must show that (1) he invoked his right to FMLA benefits, (2) he suffered an adverse employment decision, and (3) the adverse decision was

6

> causally related to his invocation of his rights. See *Erdman*, 582 F.3d at 509; *Conoshenti v. Pub. Serv. Elec. & Gas Co.*, 364 F.3d 135, 146 (3d Cir. 2004). These differences notwithstanding, *the first elements of both theories are essentially identical: a plaintiff pressing either theory must establish, among other things, that he had a right to FMLA benefits.* To that end, the plaintiff must demonstrate that he gave his employer adequate notice of his need for FMLA leave. See 29 C.F.R. §§ 825.302-.303; see also *Carter v. Ford Motor Co.*, 121 F.3d 1146, 1148 (8th Cir.1997) ("FMLA regulations require employees to provide adequate notice to their employers of the need to take leave." (citation omitted)).

*Hayduk*, 2010 WL 2650248, at *3 (emphasis added).

In proving that she had a "right to FMLA benefits," it is essential that plaintiff demonstrate a "serious health condition" as defined in the FMLA. *Schaar v. Lehigh Valley Health Serv., Inc.*, 598 F.3d 156, 158 (3d Cir. 2010). Section 2612(a)(1)(D) of FMLA allows for leave if the employee suffers from a "serious health condition that makes the employee unable to perform the functions of the position of such employee." 29 U.S.C. § 2612(a)(1)(D). "An employee is 'unable to perform the functions of the position' where the health care provider finds that the employee is unable to work at all or is unable to perform any one of the essential functions of the employee's position within the meaning of the Americans with Disabilities Act (ADA), as amended, 42 U.S.C. 12101 *et seq.*, and the regulations at 29 CFR 1630.2(n)." 29 C.F.R. § 825.123(a). For purposes of the

FMLA, "'serious health condition' entitling an employee to FMLA leave means an illness, injury, impairment or physical or mental condition that involves inpatient care as defined in § 825.114 or continuing treatment by a health care provider as defined in § 825.115." 29 C.F.R. §825.133(A).

The concept of "serious health condition" was meant to be construed broadly, so that the FMLA's provisions are interpreted to effect the Act's remedial purpose. *Stekloff v. St. John's Mercy Health Systems,* 218 F.3d 858, 862 (8th Cir. 2000). Nevertheless, the legislative history of the FMLA reveals that "the term 'serious health condition' is not intended to cover short-term conditions for which treatment and recovery are very brief. It is expected that such conditions will fall within even the ambit of most employer sick leave policies." S.Rep. No. 103-3 at 30 (1993), reprinted in 1993 U.S.C.C.A.N. 3, at pp. 30-31. The Court of Appeals for the Third Circuit has held that conditions such as upset stomach or a minor ulcer could be "serious health conditions" if they meet the regulatory criteria. See *Victorelli v. Shadyside Hospital*, 128 F.3d 184, 190 (3d Cir. 1997) (jury question as to whether peptic ulcer was a serious medical condition, noting that the FMLA is "intended to protect those who are occasionally incapacitated by an on-going medical problem").

As noted, "serious health condition" means "an illness, injury, impairment, or physical or mental condition that involves . . . inpatient care . . . or . . . continuing treatment by a health care provider." 29 C.F.R. § 825.114(a)(1), (2). A serious health condition involving "continuing treatment" by a health care provider "includes any one or more of the following: (a) Incapacity and treatment. A period of incapacity of more than three consecutive, full calendar days, and any subsequent treatment or period of incapacity relating to the same condition, that *also involves*: (1) Treatment two or more times, within 30 days of the first day of incapacity, unless extenuating circumstances exist, by a health care provider, . . . ; (2) Treatment by a health care provider on at least one occasion, which results in a regimen of continuing treatment under the supervision of the health care provider. 29 C.F.R. § 825.115(a) (1, 2).

"The term 'incapacity' means inability to work, attend school or perform other regular daily activities due to the serious health condition, treatment therefore, or recovery therefrom." 29 C.F.R. § 825.113(b).

### B. Plaintiff Does Not Have a Serious Health Condition, As Defined in the FMLA

As set forth in her Complaint, and reiterated in her response and brief in opposition to summary judgment, Ms. Scott has had back surgery and back pain for which she has received treatment by, among other providers, Dr. Castillo. In

the light most favorable to plaintiff, Dr. Castillo's medical opinion was that Ms. Scott could not perform her usual functions as housekeeper *without restrictions,* but she could *return to work* with restrictions. Dr. Castillo's limitation for "light duty for 4 weeks" was actually set forth on his "Certificate for Return to Work" which plaintiff handed to a UPMC employee on July 2, 2009. Plaintiff has not been particularly specific about the exact nature, duration and severity of her back impairment and health condition, but she is clear about what Dr. Castillo stated in his "Certificate for Return to Work" which she left for her employer: Ms. Scott was medically *cleared to return to work*, restricted to "light duty" for four weeks.

In her brief, plaintiff acknowledges it is her burden in this case to establish "that she had a 'period of incapacity' for more than three consecutive days and subsequent treatment or period of incapacity with treatment two or more times by a healthcare provider." Brief in Opposition to Summary Judgment (Doc. No. 29), at 5. There is no evidence in the record that plaintiff was ever incapacitated for this condition during relevant time periods as that term is defined in the FLMA and the regulations. To the contrary, the record shows that, during the period when she claims she was on medical leave from UPMC because of her serious health condition, she was actually working a summer job -- selling concessions at PNC Park. The swing shift UPMC offered Ms. Scott in an accommodation of her light

10

duty request was not acceptable because it would conflict with her working her summer job.

Ms. Scott's argument that she was incapacitated and had a serious health condition comes down to this: "Ms. Scott was initially placed on 'light duty' for 4 weeks. (DSMF ¶36; Plaintiff's MSJ Ex. 4). This amount of time *easily satisfies the three consecutive day requirement if 'light duty' is a period of incapacity.* Dr. Castillo clarified his original 'light duty' script first with a notation on a job description stating a twenty-five pound lifting restriction." Brief in Opposition to Summary Judgment (Doc. No. 29), at 5 (emphasis added).

Plaintiff's argument relies on a big – and implausible -- "if." The ability to return to work to perform light duty simply does not equate to a period of *incapacity*. It would stretch the definition of "incapacity" beyond all recognition if the Court were to hold that being able to do housekeeping duties restricted to light duty, i.e., lifting less than 25 pounds, for four weeks is tantamount to "a period of incapacity." Plaintiff offers no authority for the novel proposition that a doctor's *clearance to work* at light duty for four weeks is equivalent or greater than "three consecutive days" of *not being able to work*, and in fact, the plain language of the regulations and consistent precedent soundly discredits that notion. See 29 C.F.R. § 825.113(b) ("'incapacity' means inability to work, attend school or perform other

11

regular daily activities due to the serious health condition, treatment therefore, or recovery therefrom.").[1]

**V. Conclusion**

Because Ms. Scott has offered insufficient evidence of incapacitation or "serious health condition" as defined in the FMLA and the regulations, she does not pass the threshold and cannot invoke the protections of the FMLA or seek its benefits and leave. Thus, her interference claim cannot survive defendant's motion for summary judgment, and, for the same reasons, her retaliation claim must fail. (Plaintiff states that for her retaliation claim to succeed, the jury must "consider . . . whether Ms. Scott had a serious medical condition." Brief in

---

[1] *Jones v. Denver Public Schools*, 427 F.3d 1315, 1321 (10th Cir. 2005) ("Under this definition, to qualify for FMLA protection, the health condition must be sufficiently serious that it entails an absence of more than three consecutive calendar days during which the employee obtained treatment by a health care provider at least two times (or one time followed by a regimen of continuing treatment."); *Russell v. North Broward Hosp.*, 346 F.3d 1335 (11th Cir. 2003) (rejecting employee's argument that she established seven consecutive partial days of incapacity and that partial days of incapacity always, as a matter of law, meet the regulatory definition's requirements; "Russell has not cited to us any judicial or administrative interpretation of § 825.114 supporting the proposition that partial days of incapacity can ever, much less will always, satisfy the regulation's requirement of more than three consecutive days of incapacity . . . . [I]f we were to interpret § 825.114 as allowing partial days of incapacity to meet the requirement . . . , how much incapacity on a given day is enough for that day to count toward the regulatory requirement. Are five hours enough? Fifty minutes? Fifteen minutes? Five minutes? Does it depend on the circumstances? If so, how so?"); *Yansick v. Temple Univ. Health Sys.*, 2006 WL 2243178, *14 (E.D.Pa. 2006) ("Neither Defendant nor Plaintiff addresses whether an individual who is cleared to perform light duty work is incapacitated, and we can find no binding authority on this question. . . . [T]he plain language of the regulations suggest that a question of incapacity for purposes of determining whether an ailment is a 'serious health condition" does not turn on an inability to perform one function of his job, but rather may properly consider whether a plaintiff could perform light duty work or carry out other daily activities. We conclude, therefore, that the restriction to light work is not equivalent to incapacity.").

Opposition to Summary Judgment (Doc. No. 29), at 15.) Accordingly, the Court will grant summary judgment in favor of defendant, and will enter a separate order doing so.

 s/ Arthur J. Schwab
Arthur J. Schwab
United States District Judge

cc: all ECF counsel of record